816 A.2d 1080 (2003)
358 N.J. Super. 48
Samuel R. ROMANO and Theresa Romano, husband and wife, and James Transberg and Ruth Transberg, husband and wife, Plaintiffs-Appellants,
v.
Robert CHAPMAN and Veronica Chapman, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 2003.
Decided March 6, 2003.
*1081 James M. DeMarzo, Morristown, argued the cause for appellants (O'Donnell, McCord, Helfrich and DeMarzo, attorneys; Mr. DeMarzo, of counsel; Mr. DeMarzo and David N. Heleniak, on the brief).
William R. Connelly, Bedminster, argued the cause for respondents (William R. Connelly and Associates, attorneys; Mr. Connelly, of counsel; Mr. Connelly and Carole White-Connor, on the brief).
Before Judges STERN, COBURN and COLLESTER.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiffs appeal from an order of the Chancery Division, entered on February 4, 2002, denying their application for injunctive relief, dismissing their complaint for specific performance by defendants, and vacating prior temporary restraints.[1] The order was premised on the trial judge's findings of fact which concluded, after an examination of the certifications and dispositions presented, that the parties' agreement was properly terminated under the "three day review" provision of their form real estate sales contract. The trial judge relied upon our opinion in Levison v. Weintraub, 215 N.J.Super. 273, 277, 521 A.2d 909 (App.Div.1987), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987), which stated that so long as "attorney disapproval is registered within three days there can be no contract, regardless of prior approvals." The trial judge further concluded that the contract becomes "binding at the end of the three-day period and not if and when the attorneys approve the terms," so that since the defendants' counsel "disapproved of the contract ... within the three day period, defendants properly terminated the contract," notwithstanding the prior approval of both counsel.
The material facts are not in dispute. The parties entered into a form real estate sales agreement, prepared by a real estate *1082 broker, on Wednesday, September 19, 2001. The agreement included the standard "three day review" provision. On Friday, September 21, 2001, the attorneys for the respective parties spoke by telephone, and the buyers' attorney's "only requested change" was an amendment to permit the buyers to purchase the property in the name of a holding company. The sellers' attorney acknowledged the changes and faxed a letter approving the changes back to plaintiffs' attorney, together with a letter declaring that the attorney review was complete. That letter read:
Enclosed is a copy of the Contract of Sale relative to the above matter. It is acceptable to the sellers as executed. As you advised me, the only change requested by the buyers is that they be able to assign the Contract to an entity which will be formed by them to own the property. This change is acceptable to the sellers. Accordingly, attorney review is completed as of today's date.
Under separate cover, I will forward to you back title information.
Very truly yours,[2]
Thereafter, on the same day, the buyers' attorney wrote sellers' counsel, with a copy sent by fax, stating, among other things, "I have reviewed the contract of sale and your addendum which memorialized our discussion of earlier today. All are acceptable and attorney review is confirmed as complete."
On Monday, September 24, 2001, a new buyer finalized what sellers deemed to be a better offer, and defendant Robert Chapman, still within the three day review period, as calculated by the form provision concerning "counting the time,"[3] hand delivered a letter to plaintiffs' attorney from defendants' counsel stating that the attorney "hereby disapprove[s] the Contract of Sale" pursuant to the attorney review clause.[4] Plaintiffs' attorney thereafter called the sellers' counsel, and wrote him on September 26, to the effect that the contract was not "lawfully voided" and that plaintiffs desired "to continue with the Contract." Of course, no closing thereafter occurred.
Plaintiffs argue that the history of the "attorney review" clause indicates that it was not designed to prevent the creation of a binding contract "before the running of the three days" so long as the parties' attorneys have approved its contents; that Levison is distinguishable because it involved an attorney as agent acting as the seller and not acting as an attorney in entering the contract; and that the attorney disapproval in this case was not delivered to the plaintiffs personally, as required by the agreement, but to their attorney as well as the broker, and therefore was unenforceable.
The narrow legal issue before us, based on uncontested facts, is whether the "three day review" period was designed to permit each party to consult with counsel and obtain legal advise with respect to the contract, therefore confirming a binding agreement once the attorneys for both *1083 parties agree to the language of the previously executed agreement, or whether the three day period was designed to permit a "timeout period", or period of reflection "to accommodate a rethinking of the entire transaction," see Levison, supra, 215 N.J.Super. at 277, 521 A.2d 909, in which the parties can consider whether they want to go through the transaction. We are more than satisfied that the history behind the provision reflects that it was designed to give the parties an opportunity for their respective attorneys to review the form agreement, and that once the agreement is approved by the attorney, as the agent for the party, the agreement remains binding upon the client if accepted in that form by the other party. Of course, the attorney could reject the agreement under the three-day review provision, could recommend revisions to the contract, or even seek an extension of the three-day review period for a mutually agreeable time. Kutzin v. Pirnie, 124 N.J. 500, 508-09, 591 A.2d 932 (1991). Moreover, parties can have the attorney wait to the last moment to approve the agreement, or take no position at all before the midnight hour, thereby giving the client an opportunity to reflect and reverse the decision. But here counsel for the sellers indicated approval of the agreement in a form approved by the purchasers, and the trial judge should not have permitted defendants to withdraw from the agreement.
Under its plenary authority over the practice of law, N.J. Const. art. VI, § II, ¶ 3, in 1983, the Supreme Court authorized the use by licensed real estate brokers and sales persons of form residential real estate sales agreements and approved the consent judgment executed by retired Justice Mark A. Sullivan following a public hearing and resolution of a dispute between the New Jersey State Bar Association and the New Jersey Association of Realtors. New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, 93 N.J. 470, 461 A.2d 1112 (1983), modified 94 N.J. 449, 467 A.2d 577 (1983). A reading of the Supreme Court's decision and order makes clear that the dispute, and concern of the Court, related to the unauthorized practice of law by realtors, and the need for parties to residential real estate agreements to have the opportunity to consult with counsel about the transactions they had entered. The Court quoted at length from Justice Sullivan's opinion which included the following:
The proposed settlement accommodates the interests of realtors and attorneys by allowing the realtor to consummate the contract phase of the transaction, with attorneys handling the actual transfer of title. Most importantly, however, it serves to protect the public interest by making the contract subject to prompt attorney review if either buyer or seller so desires. [[New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards,] 186 N.J.Super. [391] at 396[, 452 A.2d 1323 (1982)]].
93 N.J. at 474, 461 A.2d 1112.
In approving the settlement, the Supreme Court concluded:
that approval of this settlement is appropriate. The activities to be undertaken by realtors pursuant to the settlement agreement will not transgress unduly upon the practice of law. To the extent that there is an inevitable or unavoidable overlap between the realty and legal professions, the public's interest is safeguarded through the settlement's attorney review provisions and the Court's continuing supervisory control.

Ibid.
Accordingly, the Court approved the proposed Final Consent Judgment with modifications to paragraphs one and two of the judgment. Id. at 475, 461 A.2d 1112. As a result, the sales agreement form must *1084 contain the following language conspicuously set forth at the top of the first page, as the contract in this case provided:
THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

Ibid.
The settlement, as approved by the Supreme Court, also required that the agreement provide the following form attorney review clause, as provided in the agreement before us:
1. Study by Attorney
The Buyer or the Seller may choose to have an attorney study this contract. If an[5] attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.
Id. at 475-76, 461 A.2d 1112.
The approved settlement also required form provisions relating to "counting the [three day] time" and "notice of disapproval," which paragraphs were contained in the agreement before us. Id. at 476, 461 A.2d 1112. Similar provisions were required for agreements relating to the leasing of residential dwelling units. Id. at 476-77, 461 A.2d 1112.
As we have said, the history of the attorney review provision makes it clear that the attorney review provision was designed to give the parties an opportunity for attorney review and consultation before a form agreement prepared by a real estate salesperson becomes enforceable. The settlement, as approved by the Supreme Court, provided a manner by which real estate brokers and salespersons could have agreements executed without being charged with the unauthorized practice of law, by permitting the parties the right and opportunity to have their attorney review, and modify or cancel, the contract before it takes effect. That being the case, it seems to us that once the attorney undertakes that review and approves the agreement, his or her client cannot escape the binding agreement unless the attorney for the other party, within the three day period, makes a change (or responsive change) which counsel does not approve.
It is significant that the conspicuous language at the outset of the form agreement notes that "this is a binding contract that will become final in three days." (emphasis added.) It is in the public interest for members of the public to recognize that agreements they sign are binding contracts, and this agreement is no exception unless and until an attorney makes a timely cancellation, or modification which is not acceptable to the other party. The settlement, as approved by the Supreme Court and provided in the form agreement like the contract before us, permits cancellation by the attorney and only the attorney. The "Notice of Disapproval" paragraph expressly so provides. Hence, there is a binding agreement upon execution by both parties unless, within the three day review period, as calculated by the required "counting the time" provision, the attorney cancels the agreement, or modifies it in a manner not acceptable to the other party within the three-day period, or the review period is mutually extended. See Kutzin v. Pirnie, supra, 124 N.J. at 508-09, 591 A.2d 932 ("[b]ecause neither attorney disapproved of the contract under the terms of the attorney-review provision, the contract... *1085 was legally binding as written at the end of the three-day period, changed only in respect of the sellers' attorney holding the deposit money [which both attorneys agreed to]"); Carmagnola v. Hann, 233 N.J.Super. 547, 559 A.2d 478 (App.Div.1989) (Real Estate Commission's "Agreement to Honor" requirement violative of the approved consent judgment and intrudes upon the Supreme Court's plenary authority over the practice of law).
While language in Levison v. Weintraub, supra, on which the trial judge relied, is supportive of the decision of the Chancery Division in this case, that decision is distinguishable. There, the issue was whether attorney review was precluded because an attorney signed the contract on behalf of the seller-estate. 215 N.J.Super. at 274-75, 521 A.2d 909. In the course of our opinion, we stated:
[I]t is notable that the contract does not provide that it becomes enforceable once such approval is given [upon attorney review]. This could have been provided for, but was not. Instead, it was agreed that the contract would become binding at the end of three days `unless' disapproved within that time. This means that if attorney disapproval is registered within three days there can be no contract, regardless of prior approvals.
Id. at 276-77, 521 A.2d 909.
However, we also said that the purpose of the three day review clause "is to protect parties against being bound by broker-prepared contracts without the opportunity to obtain adequate protection of their separate interests," id. at 277, 521 A.2d 909, and that the attorney could reject the agreement for any reason. Accordingly, we concluded that, although an attorney executed the agreement on behalf of the seller-estate, the seller was entitled, like any other party, to the review by an attorney which was contemplated by the three day review provision. We "emphasize[d] that our determination [was] limited to the facts recited [and] ... express[ed] no opinion as to the effect of an independent agreement by the parties, with or without the advice of counsel, to be bound by the contract within the three day period." Id. at 278, 521 A.2d 909.
The trial judge in this case concluded that after attorney review was completed here, and both attorneys had approved the agreement in a form satisfactory to the other, the sellers could still cancel the agreement because the agreement did not reduce or limit the three day period upon attorney approval. We disagree with the conclusion of the trial judge and conclude the contract became enforceable when both attorneys agreed to its form because the three-day review was designed "to protect parties against being bound by broker-prepared contracts without the opportunity to obtain adequate protection of their separate interests" through their own attorney. Peterson v. Estate of Pursell, 339 N.J.Super. 268, 278, 771 A.2d 666 (App.Div.2001), citing Carmagnola v. Hann, supra, 233 N.J.Super. at 552, 559 A.2d 478. Once a party to the agreement obtains that counsel, and his or her interests are protected by their own attorney who approves the agreement in its final form, the purpose of the "three-day review" provision has been satisfied. Although the attorney can be instructed to delay a decision or communication to the last possible moment, in case a better offer comes along or the client desires to change his or her mind, the party cannot approve an agreement through the attorney, or send a change which is acceptable to the other party, and then change its mind because a better offer is received within the three days. Stated differently, once the attorney has the opportunity to review the agreement and consult with the client, and the agreement is approved, with or without changes, the client cannot back *1086 out of the agreement, even within the three-day period.
Finally, plaintiffs assert that the notice of disapproval was not consistent with the contract requirement. The issue was not addressed by the trial judge. In light of our conclusion, it need not be passed upon by us. We merely note that the settlement approved by the Supreme Court prescribes a form "notice of disapproval," New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, supra, 93 N.J. at 476, 461 A.2d 1112, as modified in 94 N.J. 449, 467 A.2d 577, and its requirement of notice to the broker and the other party to the agreement must be complied with. Kutzin v. Pirnie, supra, 124 N.J. at 507-09, 591 A.2d 932. Accordingly, as in Kutzin, we need not pass upon whether timely actual notice to the other party through their attorney, upon timely notice to him or her, is sufficient. Ibid.
One other matter deserves comment. Defendant Robert Chapman is a real estate sales agent. In his deposition, Chapman testified that he had "no conversations" with his attorney regarding the letter from the buyers' attorney "or any changes made to the contract." While acknowledging that the attorney was "authorized to represent [him] in [the] transaction" and "to conduct attorney review of the contract," his attorney did not have "specific authority" to do what he did, as opposed to "a general authority to conduct attorney review." Chapman testified that he was never "consulted to determine whether the contract in its changed form was acceptable to me" and that he had a problem with the acquisition in the name of a limited liability company. Chapman further asserted that the attorney did not "perform [the] due diligence with regard to [the] buyer," as directed on a prior contract.
Plaintiffs subpoenaed the defendants' attorney to appear on the return date of the order to show cause, and plaintiffs asked that the attorney be permitted to testify on the question of authority. The counsel defendants retained for the litigation stated:
Your Honor, again, it doesn't, it's not a defense, first of all. I don't know what defense my adversary is referring to. We assert that Mr. Allocca acted properly by terminating within the three day period the attorney review clause, period. We also have no dispute, and it's undisputed between the parties, that both the, Mr. DeMarzo and Mr. Allocca had submitted on the second day of attorney review letters saying that they, whatever they said, they said the attorney review period is completed. They said that too, and those letters speak for themselves. There's no dispute about what they say and they were transmitted.
Beyond that there is no other legal defense being raised as far as authority or not. He had the authority to send the termination letter. He did not, there was some miscommunication perhaps between Mr. Chapman and Mr. Allocca, but I don't believe that really goes to the heart of the matter because the heart of the matter is how the Levison case applies here.
So whether Mr. Allocca is released [from appearing] or not, that's not for me to say, and I assume counsel may feel he needs to have him here even, perhaps he should stay here, but we will still raise our attorney/client objection.
The judge excused the attorney after defendants' legal argument was presented.
The issue of authority was not addressed by the trial judge in his opinion. Defendants do not expressly assert the lack of authority as a grounds for sustaining the judgment, and in their reply brief *1087 plaintiffs assert the issue has been waived. We do not comment on the subject.
The judgment under review is reversed, and the matter is remanded to the Chancery Division for further proceedings consistent with this opinion.
NOTES
[1] We raised the issue of whether the sale to a third party occurred when the temporary restraint was vacated as part of the judgment and, if so, whether the case is moot. The parties have advised that the sale has been held in abeyance by virtue of this appeal and the cloud on title which it presents. The third party complaint against the second purchaser was dismissed. Accordingly, the appeal is not moot.
[2] Defendants' present counsel did not represent them at the time and did not write the letter.
[3] The new contract was signed by the second purchaser on September 24, 2001, but not until September 25, 2001 by defendants. As the trial judge said, without any dispute before us, "[i]n construing an identical attorney review provision, Kargen v. Kerr, 248 N.J.Super. 91, 590 A.2d 255 (Ch.Div.1991) states that the day of delivery of the contract of sale is not included in the three-day review period."
[4] We have previously held that a reason need not be given for rejection of the agreement during "attorney review," Levison v. Weintraub, supra, 215 N.J.Super. at 277, 521 A.2d 909.
[5] The word "an" appears as "any" in this contract.